ERIC P. ISRAEL (State Bar No. 132426)
eisrael@dgdk.com
AARON E. DE LEEST (State Bar No. 216832)
adeleest@dgdk.com
DANNING, GILL, DIAMOND & KOLLITZ, LLP
1900 Avenue of the Stars, 11th Floor
Los Angeles, California 90067-4402
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735

Special Counsel for Plaintiff Brad D. Krasnoff,
Chapter 7 Trustee

**FILED & ENTERED**

AUG 05 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>WILLIAM ROBERT NORRIE,<br><br>    Debtor. | Case No. 2:13-bk-25751-BR<br><br>Chapter 7 |
| BRAD D. KRASNOFF, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>vs.<br><br>WILLIAM ROBERT NORRIE, an individual, and 665 33RD STREET LLC, a California Limited Liability Corporation<br><br>    Defendants. | Adv. No. 2:13-ap-02124-BR<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING HEARING ON PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT 665 33RD STREET LLC AND RECOMMENDATION TO THE DISTRICT COURT**<br><br>Date:   July 1, 2014<br>Time:  10:00 a.m.<br>Ctrm.:  1668<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

On July 1, 2014, at 10:00 a.m., in the above captioned adversary proceeding (the "Adversary Proceeding"), the Court heard and considered the Motion for Entry of Default Judgment Against Defendant 665 33rd Street LLC (the "Motion") (*docket no. 57*), filed by plaintiff Brad D. Krasnoff, the Chapter 7 trustee ("Plaintiff" or the "Trustee") for the bankruptcy estate of William Robert Norrie (the "Debtor"), the Debtor's opposition to the Motion (*docket no. 61*), Marilyn Norrie's opposition to the Motion (*docket no. 62*), and the Trustee's Reply in support of

1216359.2  26120

1

the Motion (*docket no. 64*), and the Ex Parte Application of John Norrie as trustee of "The 561 Brooks Avenue Trust Dated March 14, 2007" for Continuance of the Hearing on the Motion (*docket no. 66*). Eric P. Israel of Danning, Gill, Diamond & Kollitz, LLP, appeared on behalf of the Trustee. Elizabeth A. LaRocque of Goe & Forsythe LLP, appeared on behalf of the Debtor and the Company. Alan Broidy appeared on behalf of Marilyn Norrie, individually and as the guardian of her minor children, the purported beneficiaries of The 561 Brooks Avenue Trust. Michael D. Kwasigroch appeared on behalf of John Norrie as the purported trustee of The 561 Brooks Avenue Trust Dated March 14, 2007. Paul Burns appeared on behalf of creditors Kelly T. Mallen and John M. Pulos. 665 33rd Street LLC (the "Company") is in default and did not respond to the Motion.

The Court having considered all of the evidence submitted in support of and in opposition to the Motion, the papers on file with the Court in the Adversary Proceeding and in the Debtor's Bankruptcy Case, the Court having taken judicial notice of various facts, the Court having considered the representations and arguments of counsel at the hearing on the Motion, and good cause appearing therefor, the Court hereby makes the recommendation that the District Court enter the following Proposed Findings of Fact and Conclusions of Law in connection with the Motion in support of a final judgment in the Adversary Proceeding against the Company:

## FINDINGS OF FACT

1.  The within bankruptcy case entitled *In re William Robert Norrie*, Case No. 1:13-bk-25751-BR (the "Bankrutpcy Case") was commenced on or about June 17, 2013 (the "Petition Date"), when the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code ("the Bankruptcy Code"), which is presently pending before the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Court" or the "Bankruptcy Court").

2.  Brad D. Krasnoff accepted appointment as the Chapter 7 Trustee for the Debtor's estate and continues to serve in that capacity for the benefit of creditors.

///
///

**The Property**

3. As of December 23, 2005, the Debtor was the owner of a parcel of real property improved with a 12 unit apartment building commonly known as 1325 Cabrillo Ave, Venice, California, assessor's parcel number 4238-004-008 (the "Property") as his sole and separate property.

4. The Debtor took title to the Property pursuant to a grant deed recorded with the Los Angeles County Recorder on December 23, 2005, as instrument no. 053167543.

5. The Property is subject to a first trust deed in favor of Luther Burbank Savings ("Luther"), recorded with the Los Angeles County Recorder on December 23, 2005, as instrument no. 053167544, in the original principal amount of $1,496,250 (the "Luther Deed of Trust"). The Debtor is the trustor of the Luther Deed of Trust.

6. The Property is also subject to a second trust deed in favor of Steve Fecske and Julia Fecske (collectively, "Fecske"), recorded with the Los Angeles County Recorder on July 26, 2006, instrument no. 061651272, in the original principal amount of $120,000 (the "Fecske Deed of Trust"), the beneficial interest of which was assigned to Judy Lera ("Lera") pursuant to an assignment recorded with the Los Angeles County Recorder on or about September 16, 2009, as instrument no. 20091405386. The Debtor is also the trustor of the Fecske Deed of Trust.

7. Pursuant to a grant deed recorded with the Los Angeles County Recorder on January 9, 2008, as instrument no. 20080045643, the Debtor transferred all of his interest in the Property to the Company (the "Subject Transfer") for no consideration. The grant deed states "THERE IS NO CONSIDERATION FOR THIS TRANSFER."

8. The Company is a California limited liability company.

9. The Company's Articles of Organization were filed with the California Secretary of State on April 23, 2007, and signed by the Debtor "Robert Norrie" who was identified as the sole manager and organizer of the Company.

10. According to the Company's operating agreement dated December 2, 2007, the Debtor was the sole managing member and the sole member of the Company.

///

11. On or about January 7, 2010, the Debtor confirmed in writing to Luther that the Company was solely owned by him – the Debtor's specific words were that the Company was "solely owned by myself."

12. On or about February 19, 2010, the Debtor provided to Luther an identical copy of the December 2, 2007, operating agreement.

13. The Debtor actively communicated with Luther about the Property for the entire period of time following the Subject Transfer.

14. The Debtor sought to obtain a refinance of his loan from Luther following the Subject Transfer.

15. The Debtor provided an Application for Employer Identification Number to Luther on or about February 22, 2010, that listed the Company as a "Single Member LLC" and the Debtor as the responsible party.

16. In November 2013, (i.e. after the Petition Date) the Debtor provided an operating agreement to Macoy Capital (i.e. post-petition), in an attempt to obtain a refinance of the Property from Macoy, that listed the Debtor as 2% member and managing member of the Company and Glenn M. Terrones, as Trustee of 561 Brooks Avenue Trust as owner of a 98% managing membership interest.

17. Former Company Counsel, Glenn M. Terrones, gave his declaration stating that the operating agreement that the Debtor submitted to Macoy Capital contained a forgery as to Mr. Terrones' signature.

18. The Debtor collected the rents and operated the Property after the Subject Transfer, including post-petition after the Petition Date.

**The Bankruptcy Case**

19. On or about July 1, 2013, the Debtor filed his schedules and statement of financial affairs in the Bankruptcy Case.

20. The Debtor was the sole managing member and the sole member of the Company on the Petition Date.

///

21. The Company's corporate status is currently suspended with the California Secretary of State, and the Company has no authority to prosecute or defend claims.

22. The Debtor did not disclose his status as the managing member or his membership interest in the Company on Schedule B or his Statement of Financial Affairs.

23. The Debtor did not disclose his secured personal obligations to Luther, Fecske or Lera on his Schedule D.

24. The Debtor's Schedule E reflects that there are $1,000,000 of priority unsecured creditors that have claims against his estate. No rental deposits from leases of the Property are disclosed.

25. The Debtor did not disclose the rental income from the Property on his Schedule I.

26. The Court's Claims Register in the Bankruptcy Case reflects that an aggregate of $369,968.80 of general unsecured claims were filed against the Debtor's estate.

27. The proof of claim of John O'Gorman, docketed on the Court's Claims Register as Claim No. 6, reflects that John O'Gorman was owed $150,000 by the Debtor at the time of the Subject Transfer.

28. The Debtor continued to collect the rents and operate the Property after the Petition Date and prior to the Trustee taking control of the Property.

29. The Debtor regularly communicated with the tenants of the Property and even encouraged them not to pay rent to the Trustee after the Trustee took control over the Property.

30. On or about December 18, 2013, the Trustee filed a motion to operate the Property and use the cash collateral rents from the Property (the "Motion to Operate") (*docket no. 66*). The Debtor appeared and opposed the Motion to Operate (*docket no. 84*).

31. Pursuant to an order entered by the Court on February 18, 2014, the Court overruled the Debtor's opposition and authorized the Trustee to operate the Property and use the cash collateral rents through and including May 30, 2014 (*docket no. 115*) .

32. Pursuant to an order entered on May 6, 2014 (*docket no. 172*), the Trustee's authority to operate the Property and use cash collateral was extended to and including November 30, 2014.

33. The Debtor was involved in seven known bankruptcy filings in the three years prior to the Bankruptcy Case, as follows:

    a. On or about May 13, 2010, an involuntary petition for relief under Chapter 11 of title 11 of the United States Code in the Central District of California in Los Angeles, bearing case number 2:10-bk-29146-BR, was filed against Norrie Corporation by petitioning creditors, John Norrie, Katherine N. Norrie, William M. Norrie, which was later dismissed on July 19, 2010.

    b. On or about October 13, 2010, an involuntary petition for relief under Chapter 11 of title 11 of the United States Code, in the Central District of California in Los Angeles, bearing case number 2:10-bk-53949-ER, was filed against William R. Norrie by petitioning creditors, William Malcolm Norrie, Katherine Norah Norrie, John David Norrie, which was later dismissed on January 31, 2011.

    c. On or about March 3, 2011, a bankruptcy case was commenced by Norrie Group Development LLC, when the Debtor, in his capacity as managing member of Norrie Group Development, LLC, filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, in the Central District of California in Los Angeles, bearing case number 2:11-bk-19164-TD, which was later dismissed on May 4, 2011.

    d. On or about April 4, 2011, a bankruptcy case was commenced by the Norrie Corporation, when the Debtor, in his capacity as Norrie Corporation's President and CEO, filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code , in the Southern District of California in San Diego, bearing case number 11-05671-LA7, which was later dismissed on July 8, 2011.

    e. On or about November 17, 2011, a bankruptcy case was commenced by the Norrie Corporation, when the Debtor, in his capacity as Norrie Corporation's President and CEO, filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, in the Southern District of California in San Diego, bearing case number 11-18788-MM7, which was later dismissed on January 25, 2012.

    f. On or about February 14, 2012, a bankruptcy case was commenced by the Norrie Corporation, when the Debtor, in his capacity as was Norrie Corporation's President, filed a

Main Document    Page 7 of 15

voluntary petition for relief under Chapter 11 of title 11 of the United States Code, in the Central District of California in Los Angeles, bearing case number 2:12-bk-15163-TD, which was later dismissed on March 30, 2012.

g. On or about August 30, 2012, a bankruptcy case was commenced by Chelview LLC, when the Debtor, in his capacity as Chelview LLC's managing member, filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code, in the Central District of California in Riverside bearing case number 6:12-bk-30112-DS, which was later dismissed on November 5, 2012.

34. All of the seven prior bankruptcy cases related to the Debtor resulted in dismissals, and none were disclosed to the Court or creditors on the Debtor's petition in this Bankruptcy Case, although the Debtor signed his petition and schedules under penalty of perjury.

35. On or about May 15, 2014, the Debtor filed an Application for Approval of Waiver of Discharge Pursuant to 11 U.S.C. Section 727(A)(10) and FRBP Rule 4004(C)(1)(C) (docket no. 178) (the "Application"). The Application includes the Debtor's written waiver of his discharge.

36. The Court denied the Application as moot at the hearing on July 1, 2014, because the Debtor's discharge had already been denied pursuant to an order entered on July 1, 2014, in the related adversary proceeding entitled *Mallen et al. v. Norrie*, adv. no. 2:13-ap-01996 BR (*adv. docket no. 101*). The order denying the Application has not yet been entered by the Court.

37. On July 1, 2014, the Court heard and considered the motion of creditors Kelly T. Mallen and John M. Pulos to Expunge Lis Pendens and for Monetary Sanctions Against Debtor (the "Motion to Expunge") (*docket no. 187*). The Court granted the Motion to Expunge at the hearing and awarded the creditors sanctions against the Debtor in the amount of $7,525.00 as for the Debtor's unauthorized recording of the lis pendens. The order granting the Motion to Expunge has not yet been entered by the Court.

**The Within Adversary Proceeding**

38. On or about November 22, 2013, the Trustee commenced the within adversary proceeding (the "Adversary Proceeding") against the Debtor and the Company by filing a complaint (the "Complaint"), among other things, to avoid and recover the Subject Transfer of the

1216359.2  26120                                      7

Case 2:13-ap-02124-BR    Doc 80    Filed 08/05/14    Entered 08/05/14 16:14:05    Desc
Main Document    Page 8 of 15

Property, which was assigned adversary no. 2:13-ap-02124-BR (*adv. docket no. 1*). Also, on November 22, 2013, the Trustee recorded a lis pendens against the Property with the Los Angeles County Recorder.

39. On or about November 27, 2013, the Trustee caused the Summons and Notice of Status Conference together with the Complaint, the Notice of Compliance with Local Bankruptcy Rule 7026-1, and Adversary Proceeding Cover Sheet, to be served on the Debtor and the Company (*adv. docket no. 4*). Pursuant to the Summons and Notice of Status Conference, an answer or responsive pleading by the Company was due by December 23, 2013.

40. On or about December 23, 2013, the Debtor and the Company, through their counsel of record Julie Sione, filed motions to dismiss the Trustee's Complaint (*adv. docket nos. 10 and 12*).

41. On or about January 28, 2014, Robert Goe, of Goe & Forsythe, LLP and Julie Sione, filed a supplement to the motions to dismiss on behalf of the Debtor and the Company (*adv. docket no. 17*).

42. On or about February 11, 2014, Robert Goe, of Goe & Forsythe, LLP, filed a notice of association of counsel (*adv. docket no. 18*) stating that:

> Defendants William Robert Norrie ("Norrie") and 665 33rd St. LLC (the "Company") associate Robert P. Goe of Goe & Forsythe LLP, 18101 Von Karman Ave., Ste. 510, Irvine, CA (949)798-2460, as counsel of record.

43. On or about February 4, 2014, the Trustee filed his opposition to the motions to dismiss and the supplement filed by the Debtor and the Company (*adv. docket no. 19*).

44. In response, the Company and the Debtor, through their counsel Robert Goe of Goe & Forsythe, LLP and Julie Sione, filed a reply (*adv. docket no. 22*). In that reply the Debtor and the Company explicitly stated that they were appearing and were ready to defend. The reply stated "[i]n this case, the <u>Defendants have responded and intend to defend themselves and have made a showing of same</u>."

45. On or about February 18, 2014, the Debtor and the Company appeared at the hearing on the motions to dismiss through their counsel, Elizabeth Larocque, of Goe & Forsythe,

LLP. Ms. Sione did not appear. At the hearing on February 18, 2014, Ms. Larocque said she was appearing "for both defendants." The Court also specifically asked Ms. Larocque "[w]ho hired you for the LLC?" In response, Ms. Larocque stated that John Norrie, the managing member of the Company hired her. The Court then stated at the hearing that "I'm going to deny the motion to dismiss. I think it's clear there's jurisdiction and clearly, I don't know the merits of it, but clearly you know what the allegations are."

46. On or about March 6, 2014, the Court entered orders in the Adversary Proceeding denying the Motions to Dismiss in their entirety and setting March 25, 2014, as the deadline for the Debtor and the Company to file their answers to the Complaint (*adv. docket nos. 25 and 27*).

47. The Debtor filed his answer on or about March 17, 2014 (*adv. docket no. 31*).

48. The Company did not file an answer, and its default was taken on or about March 31, 2014 (*adv. docket no. 42*).

49. The Company timely filed a notice of appeal of the order denying the Company's motion to dismiss (*adv. docket no. 33*) and a motion for leave to file an interlocutory appeal was also purportedly filed by the Company (*adv. docket no. 35*). On or about April 3, 2014, the Trustee filed an opposition to the that motion (*adv. docket no. 44*). On or about May 9, 2014, the Bankruptcy Appellate Panel entered an order dismissing the appeal (*adv. docket no. 56*).

50. Goe & Forsythe, LLP and Julie Sione have not withdrawn as counsel in the Adversary Proceeding for the Company.

51. On June 30, 2014, John Norrie as trustee of The 561 Brooks Avenue Trust Dated March 14, 2007, filed an ex parte application for continuance of the July 1, 2014, hearing on the Motion (the "Motion to Continue") (*adv. docket no. 66*).

52. The Court found that the Motion to Continue could and should have been brought sooner and, to the extent that any emergency existed, it was created by John Norrie's failure to act diligently.

53. The Court denied John Norrie's ex parte motion to continue on the record at the hearing on July 1, 2014.

///

1216359.2  26120                                    9

54. On July 1, 2014, John Norrie as trustee of The 561 Brooks Avenue Trust Dated March 14, 2007, filed a motion to intervene in the Adversary Proceeding. A hearing on the motion to intervene is set for September 23, 2014.

55. If any of the foregoing Findings of Fact is more properly characterized as a Conclusion of Law, then any such Finding of Fact is, to such extent, hereby re-characterized as a Conclusion of Law.

## CONCLUSIONS OF LAW

56. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).

57. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O). To the extent that the Bankruptcy Court does not have authority to enter a final judgment therein, it is appropriate to request the District Court to enter these findings of fact and conclusions of law, and the final default judgment in this Adversary Proceeding.

58. All of the factual allegations in the Trustee's Complaint are admitted as to the Company due to entry of its default in the Adversary Proceeding, including that:

    a. The Debtor was the sole managing member and currently is the sole member of the Company.

    b. The within bankruptcy case is the eighth bankruptcy case filed within the last three years by the Debtor or one of the entities controlled by the Debtor.

    c. As of December 23, 2005, the Debtor owned the Property as his sole and separate property.

    d. Pursuant to a grant deed recorded with the Los Angeles County Recorded on or about January 9, 2008, the Debtor transferred all of his interest in the Property to the Company for no consideration.

    e. The Property is subject to a first trust deed in favor of Luther Burbank Savings, recorded with the Los Angeles County Recorder on or about June 28, 2006, instrument no. 20053167544 3, and a second trust deed in favor of Steve Fecske and Julia Fecske, recorded

1 with the Los Angeles County Recorded on or about December 23, 2005, instrument no.
2 20061651272. The promissory notes and deeds of trust all reflect that the Debtor is the
3 obligor/grantor.

4     f.    The Debtor failed to schedule as an asset his membership interest in the
5 Company.

6     g.    There exists in this case one or more creditors holding unsecured claims that
7 are allowable under § 502 of the Bankruptcy Code or that are not allowable only under § 502(e) of
8 the Bankruptcy Code, who could have avoided the transfer sought to be avoided herein under
9 applicable law.

10     h.    The Debtor made the Subject Transfer with the actual intent to hinder, delay,
11 or defraud one or more of his creditors.

12     i.    Pursuant to 11 U.S.C. §§ 544 and 548, California Civil Code § 3439.04(a),
13 and other applicable law, Plaintiff is entitled to avoid the Subject Transfer.

14     j.    Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff may recover
15 from the Company the Property or the value thereof, plus interest thereon at the maximum legal
16 rate.

17     k.    The genuineness and applicability of the December 2, 2007, operating
18 agreement.

19     59.    It is the Trustee's duty to, as expeditiously as possible, sell and administer assets
20 of the estate to pay creditor claims.

21     60.    The Court may consider the following factors in deciding whether to enter
22 default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's
23 substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the
24 action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's
25 default was the product of excusable neglect; and (7) the strong public policy favoring
26 decisions on the merits. <u>Eitel v. McCool,</u> 782 F.2d 1470, 1471-72 (9th Cir. 1986); <u>Elektra</u>
27 <u>Entertainment Group Inc. v. Bryant,</u> 2004 WL 783123 (C.D. Cal. Feb. 13, 2004).
28 ///

61. In consideration of the Eitel factors, the Court has concluded that entry of a default judgment against the Company is appropriate as follows:

a. The Trustee and creditors will be prejudiced if a default is not entered avoiding the Subject Transfer.

b. The Trustee's fraudulent transfer claim was properly pled and has substantive merit.

c. The circumstances under which the Debtor made the Subject Transfer supports the Trustee's allegation that the Subject Transfer was made with the actual intent to hinder, delay or defraud the Debtor's creditors

d. The Trustee does not seek recovery of a sum certain, but the recovery of the Property is directly related to the harm cause to the Debtor's creditors by the fraudulent transfer thereof

e. The Company has not appeared to contest the facts in the Complaint. Furthermore, the Company is suspended with the California Secretary of State and cannot defend itself. Therefore, there is no possibility that there are any material facts in dispute.

f. The Company had actual notice of the deadline to file its answer and did not do so. Its default was not a product of excusable neglect.

g. Although there is a policy that cases should be decided on the merits whenever possible, Fed. R. Civ. 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend as the failure to answer and defend frustrates that policy. Pepsico, Inc. v. California Security Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The Company has failed to file an answer and defend itself and it is appropriate for a default judgment to be entered.

62. The Subject Transfer was a transfer of an interest of the Debtor in property.

63. The Subject Transfer is avoidable under 11 U.S.C. § 544 and Cal. Civ. Code § 3439.04(a).

64. There exists in this case one or more creditors holding unsecured claims that are allowable under § 502 of the Bankruptcy Code or that are not allowable only under § 502(e) of the

Bankruptcy Code, who could have avoided the Subject Transfer sought to be avoided herein under applicable law. Pursuant to 11 U.S.C. § 544(b) the Trustee stands in the shoes of that creditor and may avoid the Subject Transfer.

65. John O'Gorman is an actual creditor who could have avoided the Subject Transfer.

66. The Debtor's actual intent to hider, delay, or defraud his creditors under Cal. Civ. Code § 3439.04(a) is determined by a consideration of the "badges of fraud" set forth in Cal. Civ. Code § 3439.04(b).

67. The Court concludes that the following badges of fraud are present:

    a. The Company is an insider of the Debtor.

    b. The Debtor retained possession of the Property after the Subject Transfer.

    c. The Debtor exercised control over the Property after the Subject Transfer.

    d. The Debtor concealed from the Trustee his interest in the Property, the rents from the Property, the Company, and his membership interest in the Company.

    e. The Subject Transfer of the Property was made for no consideration.

    f. The Debtor did not receive reasonably equivalent value in exchange for the Subject Transfer.

    g. The Debtor was involved in multiple bankruptcy filings in the three years prior to the Bankruptcy Case.

    h. The Debtor signed a waiver of his discharge and filed an Application seeking approval thereof.

    i. The Debtor made repeated false statements on his schedules and in the Bankruptcy Case.

68. The Debtor made the Subject Transfer with the actual intent to hinder, delay, or defraud one or more of his creditors.

69. Pursuant to 11 U.S.C. §§ 544 and California Civil Code § 3439.04(a), and other applicable law, the Trustee is entitled to avoid the Subject Transfer.

70. The Company is the initial transferee of the Subject Transfer.

///

1216359.2  26120                                    13

71.     Pursuant to Section 550(a) of the Bankruptcy Code, the Trustee may recover the Property from the Company.

72.     The Trustee is entitled to a judgment against the Company on his first claim for relief – to avoid and recover the Subject Transfer of the Property to the Company as an actual fraudulent transfer pursuant to 11 U.S.C. § 544(b) and Cal. Civ. Code § 3439.04(a)(1).

73.     The Trustee was not required to plead facts that would overcome any purported affirmative defenses of the Company in its Complaint.

74.     The Trustee's Complaint was timely brought within the statute of limitations found in Cal. Civ. Code § 3439.09 and Cal. Code Civ. P. § 338(d).

75.     Entry of a final judgment in the Adversary Proceeding against the Company is appropriate pursuant to Fed. R. Civ. P. 54(b) because it is an ultimate disposition of the Trustee's claims against the Company in the Adversary Proceeding, it will resolve all issues with respect to title to the Property, and there is no just reason for delay.

76.     After the final judgment is entered, the Trustee advises that he intends to dismiss his other claims for relief in the Adversary Proceeding.

77.     The Debtor does not have standing to oppose entry of a default judgment against the Company.

78.     Marilyn Norrie, individually and on behalf of her two children, is a non-party to the Adversary Proceeding and does not have standing to oppose entry of a default judgment against the Company.  Moreover, Marilyn Norrie has been aware of the Trustee's claims to avoid and recover the Subject Transfer of the Property since at least January 28, 2014, when her counsel Alan Broidy filed a request for courtesy NEF (*docket no. 103*) in the Debtor's Bankruptcy Case.

79.     Service of the summons and Complaint on the Company was proper and was reasonably calculated, under all of the circumstances, to apprise the Company of the pendency of the Adversary Proceeding and afford it an opportunity to present its objections.

80.     The Company was duly served with the Summons and Complaint and appeared in the Adversary Proceeding through its counsel of record.

///

81. The Company had actual notice of the deadline to file an answer in the Adversary Proceeding and did not respond.

82. John Norrie, individually and as the purported managing member of the Company, appeared or was represented in the Adversary Proceeding since at least the February 18, 2014, hearing and had actual notice of the deadline to file an answer in the Adversary Proceeding.

83. The Trustee was not required to serve the Summons and Complaint on non-parties to the Adversary Proceeding.

84. If any of the foregoing Conclusions of Law is more properly characterized as a Finding of Fact, then any such Conclusion of Law is, to such extent, hereby re-characterized as a Finding of Fact.

###

Date: August 5, 2014

*Barry Russell*
Barry Russell
United States Bankruptcy Judge

1216359.2  26120

15